JUSTICE TRIEWEILER
specially concurring.
I concur with the majority’s conclusion that § 25-2-122, MCA, which restricts venue in actions against nonresident corporate defendants, violates the Equal Protection Clause found at Article II, Section 4, of the 1972 Montana Constitution.
I disagree with the majority’s conclusion that the appropriate level of scrutiny of § 25-2-122(2), MCA, as it is applied to the parties in this case, is the rational basis test.
In cases brought by railroad workers pursuant to the Federal Employers’ Liability Act, 45 U.S.C. §§ 51-60, choice of venue for the injured worker has unique significance, which in the past has been equated with access to the courts guaranteed by Article II, Section 16, of the Montana Constitution. Any erosion of the right, therefore, necessarily implicates a fundamental right and, when done in discriminatory fashion as was done by § 25-2-122(2), MCA, requires our strict scrutiny.
The fundamental nature of an injured railroad worker’s right to choose venue is evident from the FELA itself. Section 5 of that Act, codified at 45 U.S.C. § 56, provides that:
Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.
(Emphasis added.)
In Akerly v. New York Central Railroad Co. (6th Cir. 1948), 168 F.2d 812, the U.S. Court of Appeals for the Sixth Circuit explained *247 that the venue provision in the Federal Employers’ Liability Act was more than procedural. That court concluded that it was a substantive part of those rights guaranteed to injured railroad workers pursuant to the FELA.
In Akerly, the railroad sought to limit the injured worker’s choice of venue as a condition to advancing “living expenses” while he was out of work as a result of a work-related injury. In holding that such a contract provision was void, the Court of Appeals pointed out that the venue provision found at § 56 was first enacted in 1910 because “the general venue provisions worked injustices to employees.” Akerly, 168 F.2d at 814. That court provided the following explanation of its conclusion that the rights provided for in the FELA venue statute are substantive and not merely procedural:
Section 6 creates new and important rights in the employee and it created corresponding liabilities against the employer. ... In fact this new venue statute creates, within the ordinary meaning of the word, liability against the employer in states and districts, where he could not have been sued prior to the amendment. The paragraph is broad and sweeping, and as pointed out in Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 424, 86 L.Ed. 575, the adoption of the section in its present form “argues persuasively that Congress wanted Section 5 to have the full effect that its comprehensive phraseology implies.” As specifically held in the cited case, § 5 is applicable to existing causes of action.
We think that the inclusion of this section in the Employers’ Liability Act, with its creation of new obligations against the employer, makes the venue provision an inherent part of the employer’s liability. An attempt to limit it by contract is an attempt to exempt the railroad from liability, and is void.
Akerly, 168 F.2d at 814-15.
The substantial nature of the right provided for by the FELA’s venue provision was acknowledged by the U.S. Supreme Court in Boyd v. Grand Trunk Western Railroad Co. (1949), 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55.
This Court has, since 1979, acknowledged that any effort to limit a railroad worker’s choice of venue in a FELA action beyond those limitations found at § 56 has constitutional implications pursuant to Article II, Section 16. See LaBella v. Burlington Northern, Inc. (1979), 182 Mont. 202, 595 P.2d 1184.
*248 In State ex rel. Burlington Northern Railroad Co. v. District Court (1995), 270 Mont. 146, 891 P.2d 493, we summarized our holding in LaBella as follows:
We first pointed out that this state’s public policy, dictated by Article II, Section 16, of our Constitution, requires that our courts “shall be open to every person, and speedy remedy afforded for every injury to person, property or character.” We noted that constitutional right was unrestricted by reference to citizenship or residence and that any such qualification could not pass muster under the Privileges and Immunities Clause of Article IV, Section 2 of the Unites States Constitution. LaBella, 595 P.2d at 1187. We then cited § 49-1-204, MCA, which mandates equality of rights and duties for United States citizens who are not citizens of Montana; and we found “highly persuasive” the policy favoring the injured railroad worker’s choice of forum.
State ex rel. BN, 270 Mont, at 151, 891 P.2d at 497.
In State ex rel. BN, we reaffirmed that in the unique case of injured railroad workers, because of the strong national policy favoring choice of venue in which to bring FELA actions, in combination with our constitutional obligation to assure that our courts are open to every person, an injured railroad worker’s choice of venue could not be limited by the doctrine of forum non conveniens. We held that:
The clear requirements of Article II, Section 16 of Montana’s Constitution and of § 49-1-204, MCA, and the important policy reasons supporting a liberal construction of the Act in favor of the injured worker and the FELA plaintiff’s choice of forum simply cannot be denigrated to a secondary position because of the impact — whether theoretical or real — of the filing of these types of cases on the dockets of local Montana courts. When balanced against the mandates of our Constitution, our statute and the policies underpinning the Act which are adopted and expressed in our own cases spanning three and one-half decades, applying forum non conveniens to FELA actions because of docket overcrowding is simply non sequitur. That we opened such a door in the first place and then allowed it to remain open for so long, speaks not so much to the merits of the argument, as it does to our simple failure to concede its obvious infirmity.
We again hold, as we clearly did in LaBella, that a district court in this state may not dismiss a FELA action because it deems itself to be an inconvenient forum. We again hold, as we clearly did in *249 Haug [v. Burlington Northern (1989), 236 Mont. 368, 770 P.2d 517], that a district court in this State is not empowered to change the place of trial of a FELA action based on the doctrine of forum non conveniens, whether the common law variety or, arguendo, as codified in § 25-2-201, MCA. Moreover, in light of the mandates of Article II, Section 16 of our Constitution, § 49-1-204, MCA, and the policies underpinning the Act which are adopted and expressed in our own cases spanning more than thirty years, we will not, henceforth, reexamine this issue on the basis of the numbers of out-of-state FELA cases filed in Montana’s district courts.
State ex rel. BN, 270 Mont, at 156, 891 P.2d at 499-500 (emphasis added).
Based on the historical significance of an injured railroad worker’s right to choose venue, except as limited by 45 U.S.C. § 56, based on the substantive nature of that right pursuant to federal case law, and based on our own long history of repeated conclusions that any erosion of that right also diminishes the right of access to Montana’s courts guaranteed by Article II, Section 16, of the Bill of Rights in Montana’s Constitution, I conclude that an injured railroad worker’s choice of venue is a fundamental right; that limitation of that right based on statutory classifications requires strict scrutiny and proof of a compelling state interest; and that no compelling state interest, nor any interest of any kind, has been established by the proof in this case for eroding an injured railroad worker’s right to choose the venue in which he or she brings a FELA claim.
Therefore, while I concur in the majority’s conclusion that § 25-2-122, MCA, violates the Equal Protection Clause of Montana’s Constitution, I disagree with the process by which the majority arrived at that conclusion.
It goes without saying that, for the reasons set forth in this opinion, I disagree with the conclusions expressed in the dissent. While the dissent sets forth an interesting academic exercise, it is unfounded in reality and unsupported by the experience of any lawyer who has litigated cases throughout the state of Montana. I am certain that those lawyers would, without exception, believe that choice of venue is the most significant right involved in the litigation of a case.
More important, the significance of an injured railroad worker’s choice of venue in litigation against his or her employer is recognized by eighty-seven years of federal legislation and case law, and more than thirty years of this Court’s precedent. To argue, as the dissent does, that “the law assumes that anyone or all four of the venues will *250 provide a forum where the laws will be equally administered” ignores not only reality, but the legislative history of 45 U.S.C. § 56, the substance of § 56, and the federal and state case law which has applied § 56. It ignores the fact that some venues are economically impacted by the railroad industries and justifiably perceived as unfavorable locations for the enforcement of injured railroad workers’ rights. It ignores the fact that some venues throughout Montana have been historically considered hostile to the rights of employees in general. Finally, it ignores the fact, which should be known to anyone who has reviewed the hundreds of appeals that come to this Court every year, that not all district judges are equal. Some are more knowledgeable than others about the complex and unique features of FELAlaw. Some are more committed than others to the strict enforcement of the rights guaranteed by that law. All of these factors were taken into consideration by Congress when injured railroad workers were, by statute, given greater flexibility than other litigants to choose the venue most favorable for the prosecution of their claims.
In conclusion, the law does not, and never has assumed that some arbitrary number of limited venue options will afford even-handed administration of justice to injured railroad workers. The dissent’s conclusions to the contrary are unfounded in either fact or law.
JUSTICE HUNT joins in the foregoing concurring opinion.